VINCENT K. HUDGINS v. ETHEL T. HUDGINS.

(*July* 22, 1952.)

CAREY, J., sitting.

*Ernest V. Keith* for petitioner.

Superior Court for Kent County, No. 20, Civil Action, 1952.

CAREY, J.:

The question here presented is whether the testimony justifies a finding of constructive desertion on the part of the wife under the principles laid down in *Harrington v. Harrington,* 8 *W. W. Harr.* 333, 192 *A.* 555. That case dealt with the question of whether or not refusal of sexual intercourse, without more,

constitutes constructive desertion. In passing upon that question, the Court pointed out certain basic principles which have since been followed in this State, without exception, so far as I am aware. The Court declined to adopt what is perhaps the majority rule that constructive 'desertion may exist only when the acts of the offending party are of such a nature that, they in themselves will justify a divorce. It accepted the more liberal rule which permits a petitioner to justify his leaving the common home and to establish constructive desertion against the spouse by showing misconduct on the part of the respondent "that is absolutely inconsistent with the marriage relation and that makes it impossible to continue cohabitation with safety, health or self respect, although such misconduct is perhaps not in itself a sufficient ground for a divorce". It was carefully pointed out, however, that "to come within this rule the acts of the wife clearly must be so flagrant and highly improper as to justify the husband in leaving her". Thus, said the Court, disagreements, on whatever ground, incompatability of temper, want of affection, or such treatment as merely disturbs the peace and quiet of the family home are not sufficient to justify the husband in leaving his wife.

In the present case, the averments of the petition perhaps disclose a proper case for a decree. The difficulty is, however, that the petitioner's testimony does not make out so strong a case as does his petition. A brief review of that evidence is necessary.

The parties were married in June 1946. They rented and furnished an apartment in Chester, Pennsylvania, in which they lived until sometime in 1947 when the husband became unemployed. He soon obtained employment in Newport News, Virginia, and his wife went with him to the latter City. Their apartment in Chester was subleased to petitioner's nephew. Not long after moving to Virginia, the wife returned to the home of her parents in Chester. The petition indicates that this was "because she had become homesick". That statement is understandable when we remember that her child was born shortly after she

went back to Chester. In any event, nothing in the husband's testimony indicates that he objected to her returning.

The petitioner soon gave up his job in Virginia and joined his wife in Chester where they lived with her parents for a time, as the nephew was still occupying the apartment. This arrangement proving rather unsatisfactory, he evicted his nephew and they resumed occupancy of the apartment. It was apparently located on a lot adjacent to the home of the wife's parents. Several rather heated arguments took place between them at various times, the testimony indicating that these differences were over "money" and "the way she was treating the child". Nothing in the record indicates who started the arguments or the nature of their financial disagreements. The husband did testify that he did not like her treatment of the child but thought that she was too harsh with it. On two or three occasions following these heated arguments, the wife left the apartment and went to her mother's. Each time the husband waited a few hours, then went to the mother's home and persuaded his wife to return. On another occasion, she told the husband to get out, whereupon he went to his sister's home. A little later he came back and found a note his wife had written saying "if you are going to leave, leave right and don't come back". Again, he found her at her mother's and the quarrel was patched up. On none of these occasions, so far as the testimony indicates, were any acts of cruelty committed by either party upon the other. They appear to be simply verbal arguments in which both parties lost their tempers, the wife ran home to her mother, and after cooling off came back home at her husband's request. In testifying, the husband cast no blame upon the wife for anything except that she was, in his opinion, too harsh with the child.

The foregoing disagreements occurred over a period of perhaps two years or more. The final separation took place in September 1949. As before, another argument occurred during which the wife (to use petitioner's words) "told me if I was going to leave, to go ahead and leave right, pack up and get out if I wanted to, if I didn't feel I wanted to stay with her, and she

was going to sell the furniture". He did pack up and move to Kent County, Delaware, where he has since resided. She later sold the furniture. During the interim, neither party has made any efforts towards effecting a reconciliation.

It is suggested that the wife's words on this final occasion amounted to a direction to her husband to leave the domicil, that she was planning to sell the furniture. In the first place, it must be remembered that these words were uttered in the heat of anger. In the second place, as I understand their meaning, it is to the effect that *if* he wanted to leave and did not want to stay with her, he ought to pack up and get out and, if he did, she would then sell the furniture. Indeed it may be doubted whether the husband himself considered her remarks as a command to leave, for, in response to a question from the Court, he testified as follows: "The only reason I left is because the child was getting nervous and at night she would scream in her sleep. So much arguing was going on, I figured it was best for us to break up and not have the child in a nervous state". In reply to another question, he said "I had the feeling that she desired us to separate, I don't know". Taking the petitioner's testimony at its face value, he did not leave because she forced him to do so or because she made life intolerable for him but because he thought it was best to do so for the sake of the child.

Clearly, it would be a misnomer to characterize the wife's conduct as wilful desertion. The evidence does not justify the conclusion that she was any more responsible than the husband either for the various quarrels or for the eventual breaking up of the home. Her actions in going to her mother's home next door appear to be nothing more than a method of terminating the quarrels. She would not be the first person to discover that frequently the best way to end a domestic squabble is to take a walk. The only thing to suggest that she left on these occasions with the intention not to return is the fact that twice she took off her rings and threw them on the floor as she went out of the apartment. Again, we must remember that this was done in the

heat of anger; it should not be given the significance suggested by counsel.

I am convinced that the petitioner has not shown such misconduct on the part of his wife as was "absolutely inconsistent with the marriage relation or that made.it impossible to continue cohabitation with safety, health or self-respect". The testimony establishes no more than disagreements and incompatability of temper. They are not sufficient to warrant a finding of wilful desertion by construction of law.

The prayer of the petition will be denied.