GRACE F. ANTON, Appellant, v. JAMES L. ANTON, Appellee.

(*December* 7, 1955.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*James M. Tunnell, Jr.* (of Tunnell and Tunnell) for appellant.

*Warren Roberts* (A. James Gallo with him on the brief) for appellee.

Supreme Court of the State of Delaware, No. 12, 1955.

SOUTHERLAND, C. J.:

The question in this case is whether the specific findings of the trial judge are sufficient to support his conclusion that the defendant (the wife) was guilty of constructive desertion.

One of the causes for absolute divorce under the Delaware statute is "wilful desertion for two years". 13 *Del. C.* § 1522. In construing this statute our courts have approved the doctrine of "constructive desertion". *Harrington v. Harrington,* 8 *W. W. Harr.* (38 *Del.*) 333, 192 *A.* 555. In the liberal view of this doctrine, one spouse may leave the other and sue for divorce after two years if the latter's conduct has been such as to be absolutely inconsistent with the marriage relation and such as to make it "impossible to continue cohabitation with safety, health or self-respect", even though such misconduct is not in itself a specified ground for divorce. This view was adopted by the Superior Court, 8 *W. W. Harr.* (38 *Del.*) 337, 192 *A.* 557. In approving the rule, the court said:

"In fact, if any other rule were applied one of the parties might be compelled in some cases to submit to indignities that would make life almost intolerable."

The court added, however:

"Perhaps we might also state that disagreements, on whatever ground, incompatibility of temper, want of affection, or such treatment as merely disturbs the peace and quiet of the family home are not sufficient to justify the husband in leaving

his wife." 8 *W. W. Harr.* (38 *Del.*) 337-338, 192 *A.* 157.

As counsel for the wife correctly says, this is a rule the application of which presents troublesome questions. There is no evidence in this case of misconduct affecting the husband's health or safety. At what point does misconduct cease to constitute mere disagreements, incompatibility and so forth, and become misconduct to a degree making it impossible to continue the marriage relation with self-respect? Obviously no rule of thumb can supply the answer to this question. The inquiry involves a difficult task—an examination of all the acts of the parties leading to the break-up of the marriage, and an evaluation of the degree of wrong-doing of the accused spouse. The final conclusion—that the misconduct has become so flagrant as to produce a condition no longer to be borne—must be arrived at as an over-all inference from specific facts found by the trial judge. Our courts have been conservative in applying the rule, and we think rightly so. See the *Harrington* case, *supra,* and *Hudgins v. Hudgins,* 8 *Terry* (47 *Del.*) 247, 90 *A.* 2d 478. The rule may not be used, by a process of gradual "liberalization", to grant divorces on the ground of incompatibility. But the familiar rule that the trial judge, who sees and hears the parties before him, is in a better position than an appellate court to evaluate and weigh the evidence, is especially applicable to this kind of case—involving, as it does, the fixation of a dividing line in a twilight zone. A close case should ordinarily be left to the sound judgment of the trier of the facts. *Cf. Campbell v. Campbell,* 110 *Conn.* 277, 147 *A.* 800.

The final conclusion drawn by the trial judge in this case may be stated in two sentences from his opinion:

"* * * the plaintiff had no real marriage and was being tolerated for what he was worth and no more. * * * She was a wife in name only."

These conclusions are based upon specific findings of the circumstances of the parties' married life. Before reviewing them, we state a brief chronology.

The parties were married in 1935. Apparently they separated several times. The husband served in the Armed Forces during the war and returned in 1946. His wife received him coldly. She was having an affair (whether platonic or otherwise is uncertain) with another man. They separated in 1948, but were reconciled in January, 1950, and apparently lived peaceably for a time. In August, 1951, trouble again occurred, and in November 1951, the husband left her.

We recur to the specific findings of the trial judge respecting the conduct of the wife. Instead of quoting from his opinion, we adopt the list of findings in the wife's brief. It is conceded that in general these findings are supported by statements in the record or by the personal observations of the judge. They are as follows:

"Defendant is socially ambitious.

"The parties are temperamentally incompatible.

"Defendant's affection for the Plaintiff cooled while he was in military service.

"Defendant refused to kiss plaintiff or have sexual relations with him in 1946, when he first came back from service.

"Defendant had an 'affair', though it may have been platonic, with one Sudler Wilson while plaintiff was in service and for some time after plaintiff came home in 1946.

"The married life of the parties was 'stormy'.

"A mutual friend dined with them 'every night'.

"Plaintiff and that friend did the dishes.

"Plaintiff, under protest, did the major part of the housecleaning and washing.

"Plaintiff gave most of his salary to the defendant to pay bills.

"Defendant attended a graduate school on week-ends and filled her time during the work week with teaching school, correcting papers, directing a choir, and giving vocal lessons.

"Defendant might have received a letter of some kind from Sudler Wilson while living with her husband, but even if she did not receive it after the reconciliation, she was foolish enough to retain possession of an old letter.

"Defendant has an 'irritating preciseness and condescension of manner'.

"On more than one occasion defendant told plaintiff he could leave as far as she cared, but if he did, she would have him arrested for nonsupport, and he would never get a divorce.

"Defendant showed no enthusiasm for sexual relations with plaintiff.

"After plaintiff left, defendant told a witness (but not in plaintiff's presence or hearing) that she did not care if plaintiff ever returned.

"Defendant had no real affection for plaintiff and only tolerated him 'for what he was worth' ".

To this list we add the fact, found by the trial judge, that as soon as the husband left the wife brought proceedings for non-support and has been receiving from him $50 a week, although she holds a position paying $4,400 annually, and has $5,000 in the bank.

It is argued for the wife that all these findings, taken in the aggregate, establish nothing more than hopeless incompatibility and consequent unhappiness, without such fault on the wife's part as would justify the final conclusion that she had made life unbearable for her husband. Such a result may be reached, indeed, by a process of considering separately each fact and establishing its insufficiency by itself, or even in conjunction with many of the other facts, to make out a cause for constructive

desertion. Naturally enough, this is the approach adopted by the defendant wife.

But in a case of this sort the whole may be greater than the sum of its parts. The facts found, taken collectively, are in our opinion susceptible of the interpretation that the trial judge put upon them—that the husband had no real marriage, and that the wife was a wife in name only. It is possible to infer from these findings that the wife's whole course of conduct was to make it clear to the husband that she cared nothing about the marriage or her marital duties and that she regarded him as a source of income only; that she denied to him any real marital companionship; and that she subjected him to continual humiliation. All this evidences something more than incompatibility and the family quarrels and cooling of affection that are its consequence. It suggests the inference that the trial judge drew, that there was no real marriage, and that the husband was being tolerated for what he was worth and no more. It is surely permissible to say that such conduct defeats the essential purposes of the marriage relation and renders continued cohabitation intolerable. The case is a close one, but we do not think that the trial judge exceeded the limits of sound judgment when he found for the husband.

The defendant wife makes a special point about the trial judge's comments on the episode of the other man. It is said that any conclusion based upon it, and upon the episode of the letter, is unjustified, since the affair was not shown to be illicit, had ended by August 1949, and in any event was condoned. But even though misconduct be condoned, it may be considered in determining the quality and significance of defendant's subsequent misconduct. *Cf. Singewald v. Singewald,* 165 *Md.* 136, 166 *A.* 441. Here, the whole episode has bearing on the wife's attitude toward her husband, and tends, with the other facts, to support the finding of lack of affection. True, that finding alone could not support the judgment, but it has its place in reaching the over-all conclusion.

On behalf of the wife, it is suggested that the husband's reasons for leaving his wife, as stated at the trial, are on their face insufficient. They amount, it is said, to nothing more than an unsupported suspicion that his wife was "running around", a resentment against her insistence that he do the housework, her objection to his smoking in the house (upon which no finding was made), and her nagging. It is not surprising that the witness did not succeed in stating on cross-examination all the facts that might have entered into his decision. He did, however, succeed in conveying to the court the state of mind that led him to leave her. At one point in the testimony he said: "It has been ten years since I have been discharged from the Service, and I haven't been living like a human being". This is plain enough. Living with his wife, he concluded, had become intolerable because of her conduct. Of course, whether he was justified in that conclusion was the question to be decided.

It is also said that the wife "quite often" tried to get her husband to come back to her—according to him, "in a roundabout way". The testimony cited to us on this point is far too meager to admit of any finding that the wife in good faith attempted a real reconciliation. There is nothing to show that the point was ever pressed upon the court below; and even if it was, the trial judge evidently thought it without substance.

The judgment of the Superior Court is affirmed.